UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:13-CR-56-HAB |
| | ) | |
| KEANA M. DAVIS | ) | |

**OPINION AND ORDER**

Keana M. Davis ("the Defendant") filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) (ECF No. 97).[1] The Government filed its response to her Motion on July 6, 2020. (ECF No. 102). For the following reasons, the Defendant's Motion will be DENIED.

**PROCEDURAL BACKGROUND**

On July 24, 2013, the Defendant was charged with five counts of a six count Indictment for conspiracy to possess with intent to deliver controlled substances, in violation of 21 U.S.C. §846 and four counts of distribution of a controlled substance in violation of 21 U.S.C. §841(a)(1). (ECF No. 20). These charges stemmed from the Defendant selling quantities of crack cocaine to a Fort Wayne Police Department confidential information on ten separate occasions within a two month time period between April 15, 2013 and June 20, 2013. (Presentence Investigation Report, ¶¶ 9–33, ECF No. 61). After pleading guilty on November 21, 2013, pursuant to a written plea agreement with the government, Defendant was sentenced to 151 months of imprisonment and

---

[1] To the extent the Defendant was seeking a reduction pursuant to the First Step Act ("FSA") and pursuant to this Court's General Order 2020-11, the Court referred the letter to the Northern District of Indiana Federal Community Defenders, Inc. ("FCD") for it to consider representing the defendant with respect to her motion. (ECF No. 99). On June 22, 2020, the FCD filed a Notice indicating that it would not be appearing on the Defendant's behalf. (ECF No. 101). Consistent with the Court's order, the Government responded to Defendant's *pro* se motion. (ECF No. 102).

eight years of supervised release. (ECF No. 71). On September 24, 2015, the Court reduced Defendant's sentence to 121 months. (ECF No. 90). The Defendant is currently housed at FCI Hazelton in Bruceton Mills, West Virginia.

## **DISCUSSION**

The Defendant's Motion requests compassionate release.[2] Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

(1) in any case --

   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—

(i) extraordinary and compelling reasons warrant such a reduction …

… and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

The Government concedes that the Defendant has exhausted her administrative remedies at FCI Hazelton and that her motion is properly before the Court. Thus, the Court turns to the

---

[2] Davis' motion includes references to the Fifth and Eighth Amendments in her arguments for compassionate release. These Amendments are in no way relevant to the compassionate release analysis under 18 U.S.C. § 3582(c)(1)(A). Rather, these types of claims are typically raised in civil actions under 42 U.S.C. § 1983 and will not be addressed here.

substance of the Defendant's request, her contention that she has demonstrated "extraordinary and compelling reasons" for her release.

The Defendant asserts that she should be released from custody because she has prediabetes, mild arthritis, and uterine fibroids, which she terms "ovarian masses." She believes that these conditions combined with the lack of testing and social distancing at FCI Hazelton make her continued incarceration unsafe. The Defendant further objects to increased cell confinement that the BOP has implemented as part of its COVID-19 action plan.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, in line with the statutory directive in § 3582(c)(1)(A), requires a court to make several findings.

First, the court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). To this end, a court is to consider the medical condition of the defendant, her age, her family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes. Second, the Court must determine whether the Defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Additionally, when the Defendant moves for a reduction based on COVID-19, Courts have also considered: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes her especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See Council*, 2020 WL 3097461, at *5–7; *United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, No. 2:19-CR-74-3, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic). In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where [s]he is housed and h[er] personal health conditions." *See Council*, 2020 WL 3097461, at *5; *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D.Ill. May 12, 2020).

In this case, the Defendant's filings give this Court very few reasons, let alone extraordinary or compelling ones, to justify granting her motion. The Defendant is 40 years old which does not place her in a high-risk category. With respect to her medical conditions, the Government acknowledges that the Defendant's BOP medical records demonstrate an increased A1C[3] that places her in a prediabetes category. At a June 25, 2019 appointment, the Defendant's A1C was elevated at 6.3%. A normal A1C is below 5.7% and a diagnosis of "prediabetes" is given when an individual's A1C is between 5.7% - 6.4%.[4] As a result of this increased A1C, the Defendant was advised to reduce her sugar intake and exercise.

---

[3] The A1C test—also known as the hemoglobin A1C or HbA1c test—is a simple blood test that measures your average blood sugar levels over the past 3 months. It's one of the commonly used tests to diagnose prediabetes and diabetes.

[4] https://www.cdc.gov/diabetes/basics/getting-tested.html

While the CDC recognizes diabetes as a comorbidity that may increase the risk of serious injury or death from COVID-19, the same is not true of prediabetes. *See* People Who Are At Higher Risk for Serious Illness, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed July 29, 2020). Furthermore, as the Government notes in its response, it is not a certainty that Defendant's prediabetes will progress to diabetes so long as Defendant adopts the lifestyle changes, including diet and exercise, on which Defendant has been counseled by BOP medical staff. Thus, the Court finds this condition is not one that increases the risk of serious death or injury to the Defendant from COVID-19.

The Defendant also points to her mild arthritis and her diagnosis of uterine fibroids which she contends are cancerous. Defendant has submitted no medical evidence to confirm her belief that her uterine fibroids are, in fact, cancerous and the Government states that there is no mention of cancer in her medical records obtained from the BOP. Rather, Defendant is awaiting surgery, which has been delayed due to COVID-19. The Defendant's arthritis also does not appear to be debilitating or a cause for heightened concern due to COVID-19. Accordingly, neither of these two conditions aid the Court in concluding the Defendant is at an increased risk due to COVID-19.

Next, the Defendant argues that the close quarters and lack of safety precautions at her institution put her at greater risk of contracting COVID-19. However, the numbers simply do not support her conclusion. As of July 29, 2020, FCI Hazelton is reporting 0 COVID-19 positive inmates, 3 COVID-19 positive staff, zero recovered inmates and one inmate death.[5] Thus, there is no evidence to suggest that the conditions at FCI Hazelton place her at a significant risk or even at a greater risk than that of the general population. *See, Melgarejo*, , 2020 WL 2395982, at *3

---

[5] https://www.bop.gov/coronavirus/

("[A] prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus."), *United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

Moreover, the Government's brief cites ongoing efforts by the Bureau of Prisons to take serious and substantial steps to reduce the spread of COVID-19 within its facilities. *See* Federal Bureau of Prisons, COVID-19 Action Plan: Phase Seven (posted on May 20, 2020), https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp (last visited July 29, 2020); see also, BOP COVID-19 Modified Operations Plan, https://www.bop.gov/coronavirus/covid19_status.jsp.[6] The minimal number of cases at this institution is a testament to the BOP's mitigation and safety efforts, despite the Defendant's dissatisfaction with them.

Finally, with respect to whether the Defendant poses a risk to society and the § 3553(a) factors, the Court observes that the Defendant has served a significant portion of her 121 month sentence and has a release date with good time credit of February 19, 2022. Defendant has also expressed remorse and indicates that she has made great strides in her rehabilitation. This Court encourages the Defendant to continue with her positive efforts.

However, Defendant's sentence was imposed to reflect the seriousness of the offense, promote respect for the law as well as to afford adequate deterrence and to protect the public from

---

[6] Part of this modified operations plan involves restricting the movement of inmates for their own safety; asymptomatic inmates with exposure risk factors are quarantined and symptomatic inmates with exposure risk factors are isolated and tested for COVID-19 per local health authority protocols.

further crimes of the defendant. The Defendant trafficked large quantities of crack cocaine over the course of two months. She engaged in ten transactions with a confidential informant with the intent of putting drugs into the hands of crack addicts. Given the egregiousness of her drug offense, this Court cannot say with confidence that she does not pose a risk to society. Moreover, Defendant has already received the benefit of a 30 month sentence reduction and thus, the Court finds that any additional reduction would greatly undermine the above statutory purposes of sentencing.

In sum, because this Court does not find extraordinary and compelling circumstances exist for the Defendant's release and a reduction of sentence is inconsistent with the § 3553(a) factors, Defendant does not meet the criteria for compassionate release and her motion is DENIED.

## **CONCLUSION**

Based on the foregoing, the Defendant's Motion (ECF No. 97) is DENIED.

So ORDERED on August 3, 2020.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT