UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CASE NO.: 1:13-CR-56-HAB |
| ) | |
| KEANA M. DAVIS ) | |

**OPINION AND ORDER**

On June 8, 2020, Defendant Keana Davis filed a motion seeking a reduction in her sentence under the compassionate release provisions in 18 U.S.C. § 3582(c)(1)(A). In addition to her belief that the Bureau of Prisons had a "blatant disregard" for her health at FCI-Hazelton where she is incarcerated, Davis cited to her pre-diabetic condition, mild arthritis and possibly cancerous ovarian masses[1] as "extraordinary and compelling" circumstances warranting a sentencing reduction. Upon a thorough review, the Court determined that Davis did not advance extraordinary and compelling circumstances sufficient to justify her release and that the § 3553(a) factors further weighed against her request. (ECF No. 103). Now Davis is before the Court again claiming she has just recently been diagnosed as obese, spurring her present Motion to Reconsider this Court's order denying her request for compassionate release. (ECF No. 108).

The Government has filed its response to Davis' most recent motion (ECF No. 111) along with Davis' updated medical records and a 38-page exhibit listing Davis' commissary purchases from October 2019 through September 15, 2020. The Court has reviewed these filings in detail and notes that there does not appear to be any "new" diagnosis of obesity in Davis' records. Her presentence investigation report from 2014 indicated that at that time she stood 5'4" tall and weighed 220 lbs. which equates to a BMI of 37.8. In May 2020, her medical records show her

---

[1] Davis has been diagnosed with uterine fibroids which she refers to as "ovarian masses."

weight to be 228 lbs, equating to a BMI of 39.1, just shy of what medically is considered severely obese. Thus, there is no doubt Davis qualifies as obese and has since at least 2014. There is equally no doubt, based on the Government's presentation of Davis' commissary purchases, that Davis has demonstrated a dietary lack of concern for her own health. She has made poor dietary choices, including purchasing large amounts of candy, soda, and processed baked goods, that the Court can only presume contributes to not only her pre-diabetes but her obesity.[2]

Both the Government and this Court acknowledge the Center for Disease Control's guidance that obesity (BMI over 30) increases the risk for severe illness from COVID-19. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (Sept. 11, 2020).  For obesity, the CDC recommends that a person "[f]ollow your healthcare provider's recommendations for nutrition and physical activity, while maintaining social distancing precautions." *Id.*

As noted, Davis' most recent medical record of her weight is from May 2020. She has had no specific medical complaints or concerns attributed to her weight and no other records show that her obesity presents an ongoing problem in and of itself. At her most recent medical appointment on August 19, 2020, there is no mention of any complaints from Davis regarding her weight, pre-diabetes or uterine fibroid conditions in the records, nor is there any mention of these conditions by the provider.[3] The same is true for her medical appointment on July 29, 2020, where the only conditions mentioned are psoriasis, cellulitis, and a tooth abscess.

---

[2] The Court is aware that inmates have limited control over some aspects of their diet while incarcerated. Here, however, the Government has set forth a record of commissary purchases showing Davis' selections when given control over her diet to suggest that she has not made a meaningful effort to control her weight.

[3] The medical records do note that the exam was "limited secondary to being seen through cell door window."

Additionally, Davis has not demonstrated that her obesity prevents her from engaging in self-care to manage her other conditions and her obesity is not a condition "from which she ... is not expected to recover" as weight can fluctuate. *See United States v. Elliott*, No. 3:17-CR-00051 (PGS), 2020 WL 5517461, at *5 (D.N.J. Sept. 14, 2020) (observing that inmate lost 70 lbs and was no longer considered obese); *United States v. Leachman*, No. 16-CR-30042, 2020 WL 4366087, at *2 (C.D. Ill. July 30, 2020) (noting that morbidly obese Defendant's weight decreased by 13 pounds and that Defendant had made lifestyle changes to address his weight); *but see, United States v. Henderson*, No. CR 15-0329 (ES), 2020 WL 5055081, at *3–4 (D.N.J. Aug. 26, 2020) (rejecting the Government's position that the Defendant shoulders responsibility for his obesity and the means of eliminating it "as if this medical condition is regulated by simple will power.") and *United States v. Nygren*, No. 1:16-CR-00106-JAW, 2020 WL 4208926, at *12 (D. Me. July 22, 2020) ("[T]he Court rejects the Government's position that it should deny Mr. Nygren's petition and place him at risk of severe medical consequences, even death, because in the Government's moralistic view, he lacks sufficient self-control.").

In her original petition, Davis eluded to conditions of confinement limiting her ability to leave her cell or exercise.[4] The Court acknowledges that in-facility movement has been understandably curtailed by the BOP due to COVID-19 and may hinder her ability to manage her weight through exercise. But even prior to these restrictions being in place, Davis showed little resolve to engage in the type of lifestyle modifications necessary to aid her health. And, while the Court is sympathetic to the difficulties of an individual's weight loss journey, the guidance from the CDC related to obesity during COVID is the same for all individuals, incarcerated or not –

---

[4] The Court also notes that persons housed within the BOP were not the only individuals affected by COVID-19 related restrictions. During the initial months of the COVID-19 pandemic, exercise facilities and gyms nationwide were closed or severely restricted as part of each state's social distancing and COVID-19 reduction plan. Thus, the ability of un-incarcerated individuals to maintain their physical health during this time was also challenged.

better nutrition and physical activity. Davis has not suggested, or in any way indicated, that she intends to do what is necessary to comply with the CDC's advice inside the BOP or out.

Setting aside the above discourse as to whether a compassionate release petitioner has at least some marginal obligation to maintain their own health while incarcerated, see *United States v. Tranter*, No. 1:17-CR-22-HAB, 2020 WL 3841268, at *4 (N.D. Ind. July 8, 2020)(denying compassionate release for a defendant's poor life choices as it allows "an avenue for defendants to create grounds on their own" that serves to "cheapen the concept of extraordinary and compelling circumstances."), in this case, even if the Court was inclined to find that Davis' obesity in tandem with her pre-diabetes and other health issues constituted an "extraordinary and compelling" reason justifying release, the Court remains firm in its conviction that her release is inappropriate in light of the factors set forth in § 3553(a) and the corresponding danger she presents to society if released prematurely. *See,* ECF No. 103 at pp. 6-7.  Accordingly, Davis' motion for reconsideration (ECF No. 108) is DENIED.

SO ORDERED on September 28, 2020.

> s/ *Holly A. Brady*
> JUDGE HOLLY A. BRADY
> UNITED STATES DISTRICT COURT

!